**INTERNATIONAL AIR RESPONSE, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–5117.

United States Court of Appeals, Federal Circuit.

DECIDED: Sept. 4, 2002.

Lawrence A. Kasten, Lewis and Roca LLP, of Phoenix, AZ, argued for plaintiff-appellant. On the brief was John P. Frank.

Kenneth S. Kessler, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Donald Kinner, Assistant Director.

Before MICHEL, CLEVENGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

International Air Response ("IAR") appeals from the final decision of the United States Court of Federal Claims that dismissed its complaint under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1994)("CDA"), for lack of jurisdiction on the ground that it was untimely. *See International Air Response v. United States,* 49 Fed. Cl. 509 (2001). The court held that an order issued by the United States District Court for the District of Arizona that stayed the running of the one-year period for IAR to challenge a final decision of a contracting officer in the Court of Federal Claims under the CDA was invalid because the district court lacked the authority to issue the order. Because we conclude that the government was fore-closed in the Court of Federal Claims from collaterally attacking the district court's authority to issue the stay order and because, in view of the stay order, IAR's action in the Court of Federal Claims was timely filed, we reverse and remand.

## BACKGROUND

### I.

IAR is an aviation company based in Chandler, Arizona. It specializes in fighting wildfires. In 1988 and 1989, the United States Forest Service, which is part of the Department of Agriculture, instituted a program whereby air tanker companies could provide historic aircraft to the federal government. In exchange, the companies would receive surplus C–130 aircraft for use in aerial firefighting and for other purposes. In 1989, IAR's predecessor, T & G Aviation, Inc., entered into an exchange agreement with the Forest Service.[1] Under the contract, IAR received three surplus C–130 military transport planes that it could modify for air tanker use. In exchange, it delivered three specified historic aircraft to museums designated by the Forest Service. IAR was one of at least five companies to enter into similar exchange agreements. The background of the aircraft exchange program is set forth in *Aero Union Corp. v. United States,* 47 Fed.Cl. 677, 681 (2000).

In 1994, a purported whistleblower named Gary Eitel filed a False Claims Act *qui tam* action, *see* 31 U.S.C. § 3729 (1994), in federal district court in Oregon against all of the aviation companies involved in the Forest Service's exchange program, including IAR. *See United States*

---

1. For convenience, we will refer to both International Air Response and its predecessor as "IAR".

*ex rel. Eitel v. Reagan*, 898 F.Supp. 734 (D.Or.1995). Mr. Eitel made various allegations of fraud and illegality in connection with the aircraft exchange program. The government intervened against several of the aviation companies in the *Eitel* action, but not IAR. Eventually the case was transferred to the District of Arizona and the government filed an amended complaint naming IAR as a defendant in the *Eitel* action.

On April 29, 1998, IAR filed a motion for summary judgment in the Arizona district court. On November 28, 1998, while the motion was pending, the Forest Service's contracting officer issued a final decision under the CDA, stating that the Forest Service had lacked authority to enter into the exchange agreement with IAR and that therefore the agreement was void *ab initio*. The contracting officer demanded the return of the aircraft that IAR had received under the exchange agreement. The final decision informed IAR that, as provided in the CDA, it had 90 days to appeal to the Department of Agriculture Board of Contract Appeals, *see* 41 U.S.C. § 606, or one year in which to file an action in the Court of Federal Claims, *see* 41 U.S.C. § 609(a)(3). IAR received the contracting officer's decision on December 8, 1998. Accordingly, if IAR wished to challenge the contracting officer's decision in the Court of Federal Claims, it was required to do so by December 8, 1999.[2]

On January 7, 1999, IAR moved in the district court for an order enjoining the government from enforcing the contracting officer's decision, which IAR asserted it had only 90 days to appeal. IAR argued that the court had the authority under the All Writs Act to issue such an injunction to prevent duplicative litigation.[3] The government responded by stating that it was within the district court's discretion to grant the injunction, but it argued against the court exercising its discretion to do so.

On February 1, 1999, the district court granted IAR's motion, issuing an order "staying the enforcement of the action by the contracting officer and staying any deadlines pertinent to that order for appeal or review." The government elected not to appeal the stay order to the Ninth Circuit. On October 13, 1999, the Arizona district court granted IAR's summary judgment motion in the *qui tam* action on statute of limitations grounds and lifted the stay order.

## II.

On July 21, 2000, IAR filed a complaint in the Court of Federal Claims under the CDA challenging the contracting officer's November 28, 1998 final decision.[4] As noted above, the deadline for bringing a CDA action in the Court of Federal Claims is one year. About two months of this deadline had run before the district court

---

**2.** The one-year period within which to challenge a contracting officer's final decision in the Court of Federal Claims begins to run from the "date of the receipt by the contractor of the decision." 41 U.S.C. § 609(a)(3).

**3.** The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C.

§ 1651(a). The district court's jurisdiction over the Eitel *qui tam* action was conferred by the False Claims Act, *see* 31 U.S.C. § 3730(b)(1).

**4.** The CDA applies to the exchange agreement between IAR and the Forest Service because the agreement involves the disposal of personal property. *See* 41 U.S.C. § 602(a)(4).

granted the stay; another nine months ran after the court lifted the stay and before IAR filed suit. Thus, IAR's suit was timely if the period covered by the district court's stay order is not counted against the one-year deadline.

In due course, the government moved to dismiss IAR's complaint on the ground that it was untimely because it was filed more than one year after IAR received the contracting officer's final decision. The government argued that the stay order was ineffective because the district court did not have authority to issue it. In opposing the motion, IAR argued (i) that the district court did have authority to issue the stay order; and (ii) that the government was foreclosed from collaterally attacking in the Court of Federal Claims the district court's authority to issue the order—considering that the government had failed to appeal the issuance of the order to the Ninth Circuit.

The Court of Federal Claims granted the government's motion and ordered IAR's complaint dismissed for lack of jurisdiction on the ground that it was untimely. *International Air Response v. United States,* 49 Fed.Cl. 509 (2001). The court concluded that the Arizona district court lacked authority under the All Writs Act to stay the running of the time to challenge the contracting officer's final decision in the Court of Federal Claims because the CDA requires that such a suit be filed within one year. *See id.* at 512–13. The court further concluded that only the Board of Contract Appeals and the Court of Federal Claims had subject matter jurisdiction to hear a challenge to the contracting officer's decision, and that therefore only those tribunals had the power to enter stays with respect to the CDA filing periods. *See id.* at 513. The court also

concluded that equitable tolling was not available because IAR did not file a defective pleading during the statutory period, nor was IAR induced or tricked by the government's conduct into allowing the statutory deadline to pass. *See id.* at 514. Finally, the court determined that equitable tolling was not warranted for the additional reason that the stay order was lifted six weeks before the expiration of the original filing deadline of December 8, 1999, and IAR then waited an additional seven months to file its complaint. *See id.* at 515. We have jurisdiction over IAR's appeal under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I.

■ The Court of Federal Claims dismissed IAR's complaint for lack of jurisdiction. We review a decision to dismiss a complaint on jurisdictional grounds *de novo. Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997).

IAR makes three arguments on appeal. First, it contends that the district court had authority under the All Writs Act to stay parallel administrative proceedings to protect its own jurisdiction. Second, it argues that the government's collateral attack on the district court's jurisdiction was improper. Third, it urges that the deadline for filing its CDA action in the Court of Federal Claims should be equitably tolled.

The government responds that the statutory one-year period under the CDA for filing suit against the United States is a condition on the waiver of sovereign immunity which must be strictly construed in favor of the sovereign. The government contends that the CDA does not explicitly recognize any authority or basis for tolling

or extending the 12–month filing deadline, and that therefore the Court of Federal Claims could not exercise jurisdiction over IAR's untimely complaint. The government further contends that the All Writs Act did not give the district court the authority to toll the running of the one-year period for filing suit in the Court of Federal Claims under the CDA, because the district court could not have exercised jurisdiction over a suit challenging the contracting officer's decision. The government also argues that the wording of the district court's stay order only enjoined the Department of Agriculture from bringing future administrative proceedings against IAR and did not toll the running of the period to bring a CDA action in the Court of Federal Claims. Lastly, the government urges that equitable tolling is not appropriate in this case because IAR was fully aware that it had to file suit within one year of the contracting officer's final decision and therefore failed to exercise due diligence in preserving its legal rights.

We agree with IAR that the government is foreclosed from collaterally attacking the district court's exercise of its authority under the All Writs Act to stay the running of the CDA filing period. Because the district court's action cannot be challenged, the stay was effective. As a result, IAR's suit in the Court of Federal Claims was timely because it was filed within what remained of the one-year period after the stay was lifted. We do not reach the issue of whether the district court had authority under the All Writs Act to issue the stay order, nor do we reach the issue of whether the CDA filing deadline was equitably tolled.

## II.

 We conclude that the Court of Federal Claims erred because the government was barred by the doctrine of *res judicata* from relitigating the issue of the Arizona district court's authority under the All Writs Act to issue the stay order. Under the doctrine of *res judicata*, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The doctrine serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and ... encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). A second suit will be barred by *res judicata* if: (1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The "principles of res judicata also apply to jurisdictional determinations—both subject matter and personal." *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

It is undisputed that the Arizona district court had jurisdiction over the *qui tam* action that was before it. IAR argued to the district court that the court had authority under the All Writs Act to stay the running of the time for challenging the contracting officer's final decision in order to prevent duplicative litigation. In response, the government conceded that it was within the district court's discretion to grant the stay, although the government argued against the court exercising its discretion to do so. Subsequently, the government elected not to appeal the grant of the stay order to the Ninth Circuit.

The Court of Federal Claims held that it lacked jurisdiction to hear IAR's complaint. Its decision was grounded in its conclusion that the Arizona district court lacked authority to issue a stay with respect to the CDA filing period because the district court did not have jurisdiction to hear a suit challenging the contracting officer's final decision. The issue of whether the district court had authority under the All Writs Act to stay the running of the CDA filing period, however, already had been litigated and decided in the district court. Having chosen not to appeal the grant of the stay order, the government was foreclosed from collaterally attacking the district court's exercise of jurisdiction over the contracting officer's decision and its authority under the All Writs Act to issue the stay order. *See, e.g., Insurance Corp. of Ireland,* 456 U.S. at 702 n. 9, 102 S.Ct. 2099 ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not ... reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of *res judicata* apply to jurisdictional determinations—both subject matter and personal."); *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 377, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (A "court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is *res judicata* in a collateral action."). The government is thus foreclosed from challenging the Arizona district court's authority to stay the running of the one-year period for bringing a CDA action in the Court of Federal Claims.

■ As noted, the government further argues that, in any event, the district court's stay order only enjoined the De-partment of Agriculture from bringing future administrative proceedings against IAR and did not toll the running of the CDA filing period. The contention is without merit. The district court explicitly stated that it was "staying the enforcement of the action by the contracting officer and staying any deadlines pertinent to that order for appeal or review." The wording of the order could not be clearer. IAR's complaint was timely filed because it was filed within one year of the contracting officer's decision, not counting the days during the period of the stay.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Federal Claims holding that it lacked jurisdiction over IAR's CDA action because the suit was untimely is reversed. The case is remanded to the Court of Federal Claims for adjudication of the merits of IAR's challenge to the contracting officer's final decision.

*REVERSED AND REMANDED.*